# EXHIBIT A

Skip to Main Content Logout My Account Search Menu New Civil Search Refine Search  Back

Location : All Courts   Help

# REGISTER OF ACTIONS
## CASE NO. 23-0263

| | | |
|---|---|---|
| LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER VS. MCLP ASSET COMPANY, INC. | § § § § § | Case Type: **Other Real Property**<br>Date Filed: **02/01/2023**<br>Location: **428th District Court** |

---

### PARTY INFORMATION

| | | Lead Attorneys |
|---|---|---|
| **Defendant** | MCLP ASSET COMPANY, INC. | |
| **Plaintiff** | LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER | Robert C. Newark, III<br>*Retained*<br>866-230-7236(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**
| | |
|---|---|
| 02/01/2023 | **Court's Docket Sheet** |
| 02/01/2023 | **Plaintiffs Original Petition (Open Case)** |
| 02/01/2023 | **Proposed Order Received**<br>*Temporary Restraining Order* |
| 02/06/2023 | **Temporary Restraining Order (Before Original Judgment)** (Judicial Officer: Pool, Joe R ) |
| 02/07/2023 | **Cash Bond (Rule 684 T.R.C.P.)**<br>*$100.00* |
| 02/07/2023 | **Temporary Restraining Order (Before Original Judgment)** (Judicial Officer: Pool, Joe R )<br>*AMENDED* |
| 02/21/2023 | **Temporary Restraining Order Hearing**  (9:00 AM) (Judicial Officer Henry, William R) |

---

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Plaintiff** LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER | | |
| | Total Financial Assessment | | 355.00 |
| | Total Payments and Credits | | 355.00 |
| | **Balance Due as of 02/27/2023** | | **0.00** |
| 02/02/2023 | Transaction Assessment | | 350.00 |
| 02/02/2023 | Texfile Electronic Payment   Receipt # 328202-DC | LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER | (213.00) |
| 02/02/2023 | State Credit | | (137.00) |
| 02/07/2023 | Transaction Assessment | | 5.00 |
| 02/07/2023 | Payment   Receipt # 328401-DC | LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER | (5.00) |

# EXHIBIT B

# EXHIBIT B-1

FILED
2/1/2023 8:41 PM
Avrey Anderson
District Clerk
Hays County, Texas

Cause No: 23-0263 _____

| | | |
|---|---|---|
| **LYNN SCUDDER, ACTING** | ) | **IN THE DISTRICT COURT** |
| **UNDER A POWER OF** | ) | |
| **ATTORNEY GIVEN BY RUBY** | ) | |
| **JO SCUDDER,** | | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **_____ JUDICIAL DISTRICT** |
| | ) | |
| **MCLP ASSET COMPANY, INC.,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | **OF HAYS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, PERMANENT INJUNCTION, AND REQUEST FOR DISCLOSURES

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER, hereinafter called Plaintiff, by and through her attorney, Robert C. Newark, III, and files this Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction and in support thereof would show unto the Court the following:

### DISCOVERY CONTROL PLAN

1.      The Plaintiff herein intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure.

1

Copy from re:SearchTX

## PARTIES

2.      Plaintiff, LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER, is an individual that resides in HAYS COUNTY, Texas.

3.      Defendant, MCLP ASSET COMPANY, INC., (hereinafter referred to as "Lender") is a foreign entity doing business in in HAYS COUNTY, State of Texas.  Lender may be served with process through its registered agent at any address where its registered agent may be found.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the controversy because the claims asserted in this Petition, arose, in whole or in part, in HAYS COUNTY, Texas and the amount in controversy exceeds the minimal jurisdictional limits of the court.

5.      This Court has personal jurisdiction over the Defendant because the acts and omissions complained of herein occurred in Texas, the Defendant does and/or did do business in the State of Texas, has committed a tort, in whole or in part in Texas, is a resident and citizen of Texas, has minimal contacts with the State of Texas during the period of time complained of herein.

6.      Venue is properly laid in HAYS COUNTY, Texas, because all or a substantial part of Plaintiff's cause of action arose in HAYS COUNTY, Texas.

## NATURE OF SUIT

7.      This is a suit to enjoin and refrain a foreclosure sale proceeding scheduled by Defendant, for Tuesday, February 7, 2023, between 10:00 am and 4:00 pm at the location designated by the county clerk.  See Exhibit A – Notice of Sale which is supposedly sent to Plaintiff.

Copy from re:SearchTX

8.      In addition to the aforementioned request for the extraordinary relief to abate the foreclosure proceeding, Plaintiff brings this lawsuit against Defendant alleging negligence, violation of RESPA, 12 USC Sec. 1024, et seq., violation of the Texas Prop. Code Ann. Sec. 51.002 et seq., actual damages and attorney fees.

## EXISTENCE OF CONTRACT AND PERFORMANCE

9.      On or about November 29, 2010, Plaintiff entered into a written contract with Defendant, for the purchase of a house and lot located at 450 Shady Bluff Dr, Wimberley, TX 78676.   See Exhibit B – Deed of Trust.

10.      The original principal of the contract was $150,000.00.

## NEGLIGENCE

11.      Plaintiff alleges that the Defendant had a duty to Plaintiff to provide notice of any transfer, assignment, or sale of the note, to properly manage the loan and the escrow amount, to comply with the notice provisions contained in the deed of trust before accelerating the note and foreclosing on the property, and, when applying for a mortgage modification, to protect their rights and not mislead them.  As shown above, Defendant breached the duties it owed to Plaintiff and as a result of this breach Plaintiff was damaged.

12.      The duty of the Defendant can be found in the regulation of the Department of Housing and Urban Development ("HUD") which is incorporated with the Deed of Trust.

13.      A Lender can be found liable to its customers for negligent misrepresentation in the servicing of the Loan.  *See Federal Land Bank Assn'*, 825 S.W.2d 439, 442 (Tex. 1992). Even a Defendant's accidental false representation can be actionable.  *See Milestone Props. Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex. App – Austin 1993).   *SusserPetCo. V. Latina Oil Corp.*, 574 S.W.2d 830, 832 (Tex. App. – Texarkana 1978, no writ.).   Defendant

3

Copy from re:SearchTX

failed to use reasonable care in communicating to Plaintiff the options of loss mitigation. Plaintiff relied on the representations to her detriment. The Defendant's representations involved a transaction to which Defendant had a pecuniary interest. However, the representations were false and Defendant is wrongfully attempting to foreclose on Plaintiff's property, causing Plaintiff to sustain damages, including but not limited to damages for clouding the title/slander of title concerning said residence, harm to credit reputation, credit worthiness, and credit history, actual damages, and the value of time lost trying to remedy the problem against Defendant.

14.    Defendant failed to perform its duties as mortgage servicer. Defendant avoided and evaded Plaintiff inquiries about an appeal an appeal of their modification application. Subsequently, without offering more than one loan workout alternative or replying to Plaintiff inquiries regarding an appeal to denial of a HAMP modification, the Defendant, forwarded a notice posting foreclosure sale of Plaintiff's property for February 7, 2023.

15.    As a result of Defendant's negligence, Plaintiff is in danger of being dispossessed of her property. Defendant's mishandling of Plaintiff's loss mitigation constitutes a negligent misrepresentation.

16.    As a result, Defendant has breached the written contractual agreements and covenants of the note and the requirements pursuant to the Bureau of Consumer Financial Bureau pursuant to applicable law.

17.    As a result of Defendant's breach, Plaintiff has suffered harm as she has incurred additional charges to her loan balance and escrow account and is continuing to incur them to the present.

Copy from re:SearchTX

## VIOLATION OF TEXAS. PROP. CODE ANN. CH 51

18.     Mortgage foreclosures in the State of Texas are governed by the express terms of the Deed of Trust and by Chapter 51 of the Property Code.

19.     More specifically, it is well settled by statue that the mortgagee is required to (1) notify the mortgagor by certified mail that the Deed of Trust is in default and give him or her at least twenty (20) days to cure and/or protest and (2) give mortgagor at least twenty-one (21) days notice of the sale by certified mail.  Tex. Prop. Code Ann. 51.0002(b)(3), (d).

20.     In the case at bar, Plaintiff's mortgage loan including Deed of Trust set out terms of default and acceleration in its covenants and as such when she received the notice of accelerations, she in fact did raise issues regarding her loan and payment history and pending loan workout alternatives as such until the disputes were resolved any notice to post her property for sale would be premature.

21.     To wit, if Defendant is allowed to proceed with the finalization of the foreclosure proceedings of Plaintiff's property, Plaintiff will suffer immediate and irreparable injury.

22.     Specifically, Plaintiff will be harmed in that she will lose all of the money previously invested in the property without having a fair opportunity to protect the investment of which Plaintiff has no adequate remedy at law.  Plaintiff has no alternative but to seek injunctive relief.

### BREACH OF CONTRACT

23.     The elements of a breach of contract action are:  (1) the existence of a valid contract; (2) performed or tendered performance by the Plaintiff; and (3) breach by the Defendant.

5

Copy from re:SearchTX

24.     Plaintiff alleges that Defendant failed to comply with HUD regulations outlining procedures that must be followed prior to accelerating and foreclosing a loan subject to the FHA.

25.     The paragraphs which Lender and/or Servicer breached are paragraphs 15, 16, 19, 20, and 22.

26.     The Defendants have failed to performed these actions and others under the Deed of Trust and Note.

27.     The Defendant failed to follow the foregoing steps and thus breached the contract with Plaintiff.

28.     As a result, Defendant has breached the written contractual agreements and covenants of the note by wrongful applying these charges over and above Plaintiff's principal loan balance.

29.     As a result of Defendant's breach, Plaintiff has suffered harm as she has incurred additional charges to her loan balance and escrow account and are continuing to incur them to the present.

## ALL PARAGRAPHS INCORPORATED

30.     Each of the proceedings and succeeding paragraphs are incorporated as part of the following cause of action.

## ATTORNEY'S FEES

31.     Plaintiffs are entitled to recover reasonable and necessary attorney fees pursuant to Tex. Civ. Prac. & Rem. Code Sec. 37.009 and pursuant to Tex. Civ. Prac. & Rem. Code Chapter 38 in this action for the breach of contract as authorized in Sec. 38.001(8).

6

Copy from re:SearchTX

**DISCOVERY – DISCLOSURES - TRCP 194.2**

32.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiffs request that Defendant disclose the information and material described in Rule 194.2 within 50 days of service.

**NOTICE – TRCP 193.7**

33.     Plaintiffs hereby put Defendant on notice that Plaintiffs intend to use Defendant's discovery responses as evidence at trial in accordance with such rights and privileges established by Texas Rules of Civil Procedure 193.7.

**RULE 47 DECLARATIONS**

34.     By reason of all the above and foregoing it has become necessary to bring this suit for which it is now brought in a just and reasonable sum greatly in excess of the jurisdictional limits of this Honorable Court, together with all interest, pre and post judgment to which Plaintiff is entitled by law.     As required by Rule 47(b), Texas Rules of Civil Procedure, Plaintiff's counsel states that the damages sought are in an amount within the jurisdictional limits of this Court.  As required by Rule 47(c), Texas Rules of Civil Procedure, Plaintiff's counsel states that Plaintiff seeks monetary relief not more than $250,000.00.  Plaintiff also seeks injunctive relief.

**APPLICATION FOR TEMPORARY RESTRAINING ORDER**

35.     Defendant, MCLP ASSET COMPANY, INC., should not be allowed to finalize foreclosure proceedings including transfer or any other disposition of the property, or taking possession or exercise any control over the property located at 450 Shady Bluff Dr, Wimberley, TX 78676.

Copy from re:SearchTX

36.     Defendant, MCLP ASSET COMPANY, INC., has failed to follow state law notice provisions of the Texas Property Code and is not entitled to proceed with the sale of the property through wrongful foreclosure.

37.     Plaintiff will suffer irreparable injury if Defendant, MCLP ASSET COMPANY, INC., is not enjoined from effectuating the wrongful foreclosure sale of 450 Shady Bluff Dr, Wimberley, TX  78676.

38.     There is a substantial likelihood that Plaintiff will succeed on the merits of its lawsuit.

39.     The threatened harm to Plaintiff outweighs the harm of a preliminary injunction would inflict on the Defendant.

40.     In addition, the property in question affords Plaintiff a substantial equity amounts over and above the alleged debt owed to the Defendant.

41.     Issuance of a preliminary injunction is in the public interest.  The granting of a preliminary injunction would maintain the status quo and retains one of the most significant assets of the Plaintiff.  To deny the preliminary injunction would be to unjustly enrich the Defendant and extinguish the Plaintiff substantial equity interest in its property.

42.     Plaintiff is willing to post a bond in an amount the court deems appropriate.

43.     Plaintiff asks the court to set her application for preliminary injunction for a hearing at the earliest possible time, and after hearing the application, issue a preliminary injunction against Defendant.

## MOTION FOR TEMPORARY RESTRAINING ORDER

44.     All allegations are incorporated herein.

8

Copy from re:SearchTX

45.     The Plaintiff is entitled to a Temporary Restraining Order to restrain further transfer, or any other disposition of the property or taking possession or exercising any contract over the property as follows:

        a.      Plaintiff will incur significant irreparable injury and loss.  The threaten damage which would be incurred would be significant and substantial as specified above and incorporated herein by reference.

        b.      There is substantial likelihood of success on the merits as specified within.

        c.      The threaten harm outweighs the harm a temporary restraining order would inflict on the Defendant specified within and incorporated herein by reference.

        d.      The Temporary Restraining Order would serve the public interest as specified above, incorporated by reference.

        e.      Plaintiff is willing to post a bond in the amount the court deems appropriate.

46.     For these reasons, Plaintiff asks the Court to issue a temporary restraining order preventing and refraining Defendant, its attorneys, agents, successors and/or assigns from consummating, continuing or effectuating any transaction, transferring the real property located at 450 Shady Bluff Dr, Wimberley, TX  78676, perfecting its lien or security interest in the property, exercising any dominion or control over the real property, or attempting to take possession of the property, and to set the request for preliminary injunction for hearing at the earliest possible time.

47.     An Affidavit that proves the allegations in the Application for Injunction Relief is attached and incorporated by reference.

Copy from re:SearchTX

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

a.      Invalidate the foreclosure sale that is scheduled for February 7, 2023

b.      Issue an immediate temporary restraining order preventing and refraining Defendant, its attorneys, agents, successors and/or assigns from consummating, continuing or effectuating any transaction, transferring the real property located at 450 Shady Bluff Dr, Wimberley, TX  78676, perfecting its lien or security interest in the property, exercising any dominion or control over the real property, or attempting to take possession of the property,

c.      Following hearing and notice to Defendant, issue a temporary injunction to prevent Defendant and its agents and employees from proceeding with the foreclosure sale of Plaintiff's property during the pendency of this cause of action in order to maintain the status quo herein;

d.      Order the Defendant to be cited to appear and answer within and that upon final hearing, this Court grant declaratory judgment that no foreclosure sale of Plaintiff's house be validated during the pendency of this cause and enter a permanent injunction to prevent Defendant, its employees or agents from foreclosure validation on the property; and evicting Plaintiff from her property;

10

Copy from re:SearchTX

e.      The Plaintiff be granted her damages, costs, and reasonable attorney fees, and any

other relief at law or in equity to which they may be entitled.

> RESPECTFULLY SUBMITTED,
> A Newark Firm
> 1341 W. Mockingbird Lane, Ste 600W
> Dallas, Texas  75247
> Telephone:     (866)230-7236
> Facsimile:     (888)316-3398
> Email:         Robert@newarkfirm.com

By:      /s/Robert C. Newark, III_____
> Robert C. Newark, III
> Texas Bar No. 24040097
> Oklahoma Bar No. 21992
> ATTORNEY FOR PLAINTIFF

11

Copy from re:SearchTX

Unsworn Declaration Made Under Penalty of Perjury

I make this unsworn declaration under penalty of perjury in place of verification as

allowed by Texas Civil Practices and Remedies Code Section 132.001.

1.    I, Lynn Scudder was appointed Power of Attorney by Ruby Jo Scudder on

      August 10, 2017.

2.    My date of birth is   03/04/1970

3.    My address is   3512 Piedmont Pl, Schertz TX 78154

4.    I declare under penalty of perjury that: I have personal knowledge of all the facts

set forth in the PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR TEMPORARY

RESTRAINING ORDER, TEMPORARY INJUNCTION, PERMANENT INJUNCTION, AND

REQUEST FOR DISCLOSURES and hereby state that every factual statement set forth therein is

true and correct.

Signed under penalty of perjury in   Guadalupe   County , Texas.

*DocuSigned by:*

*Lynn Scudder*

4BBFF554736F479...

Declarant

EXHIBIT A

Copy from re:SearchTX

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU ARE OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OR ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE DUTY MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

**1.** *Property to Be Sold.* The property to be sold is described as follows: LOT NOS. SC-SEVENTY-FIVE (SC75) THROUGH SC SEVENTY-NINE(SC79), WOODCREEK, SECTION NINE-A (9A), A SUBDIVISION IN HAYS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 1, PAGE 343, PLAT RECORDS, HAYS COUNTY, TEXAS.

**2.** *Instrument to be Foreclosed.* The instrument to be foreclosed is the Deed of Trust dated 11/29/2010 and recorded in Book 4021 Page 99 Document 2010-10033273 real property records of Hays County, Texas.

**3.** *Date, Time, and Place of Sale.* The sale is scheduled to be held at the following date, time, and place:

| | |
|---|---|
| Date: | 02/07/2023 |
| Time: | 01:00 PM |
| Place: | Hays County, Texas at the following location: ON THE FRONT STEPS OF THE HAYS COUNTY GOVERNMENT BUILDING, OR THE PRECEDING AREA IS NO LONGER THE DESIGNATED AREA, AT THE AREA MOST RECENTLY DESIGNATED BY THE COUNTY COMMISSIONER'S COURT or as designated by the County Commissioners Court. |

**4.** *Terms of Sale.* The sale will be conducted as a public auction to the highest bidder for cash. Pursuant to the deed of trust, the mortgagee has the right to direct the Trustee to sell the property in one or more parcels and/or to sell all or only part of the property. Pursuant to section 51.009 of the Texas Property Code, the property will be sold in AS IS, WHERE IS condition, without any express or implied warranties, except as to the warranties of title, if any, provided for under the deed of trust.

**5.** *Obligations Secured.* The Deed of Trust executed by RUBY JO SCUDDER, provides that it secures the payment of the indebtedness in the original principal amount of $150,000.00, and obligations therein described including but not limited to (a) the promissory note; and (b) all renewals and extensions of the note. MCLP Asset Company, Inc. is the current mortgagee of the note and deed of trust and SELENE FINANCE LP is mortgage servicer. A servicing agreement between the mortgagee, whose address is MCLP Asset Company, Inc. c/o SELENE FINANCE LP, 3501 Olympus Boulevard, 5th Floor, Suite 500, Dallas, TX 75019 and the mortgage servicer and Texas Property Code § 51.0025 authorizes the mortgage servicer to collect the debt.

**6.** *Substitute Trustee(s) Appointed to Conduct Sale.* In accordance with Texas Property Code Sec. 51.0076, the undersigned attorney for the mortgage servicer has named and appointed, and by these presents does name and appoint AVT Title Services, LLC, located at 5177 Richmond Avenue Suite 1230, Houston, TX 77056, Substitute Trustee to act under and by virtue of said Deed of Trust.

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE. THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**

Mackie Wolf Zientz & Mann, P.C.
Brandon Wolf, Attorney at Law
L. Keller Mackie, Attorney at Law
Michael Zientz, Attorney at Law
Lori Liane Long, Attorney at Law
Chelsea Schneider, Attorney at Law
Ester Gonzales, Attorney at Law
Karla Balli, Attorney at Law
Parkway Office Center, Suite 900
14160 Dallas Parkway
Dallas, TX 75254

EXHIBIT B

Copy from re:SearchTX

**** **Electronically Filed Document** ****

Hays County Texas
Linda C. Fritsche
County Clerk

**Document Number:  2010-10033273**
**Recorded As      :  ELECTRONIC RECORDING**

**Recorded On:**        November 30, 2010
**Recorded At:**        12:30:12 pm
**Number of Pages:**    22
**Book-VI/Pg:**         Bk-OPR   VI-4021   Pg-99
**Recording Fee:**      $96.00

**Parties:**

**Direct- SCUDDER RUBY JO**
**Indirect- EVERETT FINANCIAL INC**

**Receipt Number:**     260502
**Processed By:**       Samantha Breland

*********** **THIS PAGE IS PART OF THE INSTRUMENT** ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



I hereby certify that this instrument was filed for record in my office on the date and
time stamped hereon and was recorded on the volume and page of the named records
of Hays County, Texas

Linda C. Fritsche, County Clerk

Copy from re:SearchTX

15/ITC/DAR/ _1018901_ -WIM

AFTER RECORDING RETURN TO:
**EVERETT FINANCIAL, INC. DBA SUPREME LENDING**
**14801 QUORUM DRIVE, SUITE 300**
**DALLAS, TEXAS 75254**

This instrument was prepared by:
**BLACK, MANN, & GRAHAM LLP**
**2905 CORPORATE CIRCLE**
**FLOWER MOUND, TX 75028**

Loan Number: 830100107919

_____ (Space Above This Line For Recording Data) _____

# DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

MIN: **100307110002676893**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **November 29, 2010**, together with all Riders to this document.

(B) **"Borrower"** is RUBY JO SCUDDER, AN UNMARRIED WOMAN. Borrower is the grantor under this Security Instrument.

(C) **"Lender"** is EVERETT FINANCIAL, INC. DBA SUPREME LENDING. Lender is A TEXAS CORPORATION, organized and existing under the laws of TEXAS.
Lender's address is **14801 QUORUM DRIVE, SUITE 300, DALLAS, TEXAS 75254**. Lender includes any holder of the Note who is entitled to receive payments under the Note.

---

**TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS**
Page 1 of 15

Form 3044  1/01

IDS, Inc.

Borrower(s) Initials _____

Copy from re:SearchTX

(D) "Trustee" is **MICHAEL BURNS**

Trustee's address is **8111 LBJ FREEWAY, STE 480, DALLAS, TEXAS 75251**.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under this Security Instrument.** MERS is organized and existing under the laws of **Delaware**, and has an address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026**, tel. **(888) 679-MERS**.

(F) "Note" means the promissory note signed by Borrower and dated **November 29, 2010**. The Note states that Borrower owes Lender **ONE HUNDRED FIFTY THOUSAND AND NO/100** Dollars (U.S. **$150,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **December 1, 2040**.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ VA Rider |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |
| ☐ Other (Specify) | | |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                              Form 3044  1/01

IDS, Inc.                                                                    Borrower(s) Initials _R.A.S._

Copy from re:SearchTX

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of Hays:

> LOT NOS. SC-SEVENTY-FIVE (SC75) THROUGH SC SEVENTY-NINE (SC79), WOODCREEK, SECTION NINE-A (9A), A SUBDIVISION IN HAYS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 1, PAGE 343, PLAT RECORDS, HAYS COUNTY, TEXAS.

Parcel Identification Number:    11-9818-0000-07500-8

which currently has the address of: **450 Shady Bluff Drive**
**Wimberley, TEXAS 78676**                                                                          ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                Form 3044  1/01

IDS, Inc.                                                                 Borrower(s) Initials _R.Q.S._  _____

Copy from re:SearchTX

its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds,

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                          Form 3044  1/01
Page 4 of 15
IDS, Inc.                                                                   Borrower(s) Initials _____

annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear

Copy from re:SearchTX

interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

---

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement

Copy from re:SearchTX

between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial

taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded

---

Copy from re:SearchTX

permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;

---

Borrower(s) Initials _R_ _g_ _2_

Copy from re:SearchTX

(b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or

---

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                                  Form 3044  1/01
Page 11 of 15

IDS, Inc.                                                                                                  Borrower(s) Initials _RfS_

Copy from re:SearchTX

threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                                   Form 3044  1/01

IDS, Inc.                                                                                              Borrower(s) Initials

Copy from re:SearchTX

Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☒ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

---

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                                                    Form 3044  1/01
IDS, Inc.                                                                                  Borrower(s) Initials _RG-S_ _____

Copy from re:SearchTX

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____

_____ 11/29/10 (Seal)    _____ (Seal)
Ruby Jo Scudder                              -Borrower                              -Borrower

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044  1/01
                                                Page 14 of 15
IDS, Inc.

Copy from re:SearchTX

STATE OF TEXAS
County of _____ Hays _____ ss:

Before me _Dawn Riley, Notary Public_ on this day personally appeared **Ruby Jo Scudder,** known to me (or proven to me on the oath of _____ or through _Driver's License_ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _24th_ day of _November_ , _2010_ .

My Commission Expires: _____

(Seal)

DAWN RILEY
MY COMMISSION EXPIRES
July 7, 2011

_____
Notary Public

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT with MERS                    Form 3044  1/01
Page 15 of 15

IDS, Inc.                                                                    Borrower(s) Initials _____

Copy from re:SearchTX

Loan Number: **830100107919**

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **29th day of November, 2010,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **EVERETT FINANCIAL, INC. DBA SUPREME LENDING, A TEXAS CORPORATION** (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**450 Shady Bluff Drive
Wimberley, TEXAS 78676**
(Property Address)

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

**Covenants, Conditions and Restrictions of Record**

(the "Declaration"). The Property is a part of a planned unit development known as

**WOODCREEK, SECTION NINE-A (9A)**
(Name of Planned Unit Development)

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

---

**MULTISTATE PUD RIDER -** Single Family —
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    **Form 3150 1/01**
Page 1 of 3

Initials _Rgn S._

Copy from re:SearchTX

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

---

**MULTISTATE PUD RIDER -** Single Family –
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 2 of 3

**Form 3150 1/01**

Initials _lgs_

Copy from re:SearchTX

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_Ruby Jo Scudder_ 11/2/15 (Seal)                          _____ (Seal)
**Ruby Jo Scudder**                    -Borrower                                                    -Borrower

**MULTISTATE PUD RIDER** - Single Family —
**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                          **Form 3150 1/01**
Page 3 of 3

Copy from re:SearchTX

Loan Number: **830100107919**
MIN: **100307110002676893**

# 1-4 FAMILY RIDER

### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **29th day of November, 2010**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

**EVERETT FINANCIAL, INC. DBA SUPREME LENDING, A TEXAS CORPORATION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**450 Shady Bluff Drive
Wimberley, TEXAS 78676**
(Property Address)

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

---

**MULTISTATE 1-4 FAMILY RIDER-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP –57R (0811)                    **Page 1 of 3**                    **Form 3170 1/01**

Borrower (s) Initials _____

IDS, Inc.

Copy from re:SearchTX

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

---

**MULTISTATE 1-4 FAMILY RIDER-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP –57R (0811)                    **Page 2 of 3**                    **Form 3170 1/01**

Borrower (s) Initials _R.g.s_____

IDS, Inc.

Copy from re:SearchTX

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

Ruby Jo Scudder   11/29 (Seal)
_____          _____
**Ruby Jo Scudder**          -Borrower                                              -Borrower

(Seal)

**MULTISTATE 1-4 FAMILY RIDER-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP –57R (0811)                    **Page 3 of 3**                    **Form 3170 1/01**
IDS, Inc.

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Robert Newark on behalf of Robert Newark
Bar No. 24040097
robert@newarkfirm.com
Envelope ID: 72361485
Status as of 2/2/2023 11:35 AM CST

Associated Case Party: LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert Newark | | robert@newarkfirm.com | 2/1/2023 8:41:55 PM | SENT |
| Kelly Raper | | Kelly@newarkfirm.com | 2/1/2023 8:41:55 PM | SENT |
| Brittany Wilbanks | | brittany@newarkfirm.com | 2/1/2023 8:41:55 PM | SENT |

Copy from re:SearchTX

# EXHIBIT B-2

Received at District Clerk's Office
On 2/1/2023 8:41 PM

Cause No: 23-0263 _____

| | | |
|---|---|---|
| LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER, | ) ) ) ) | IN THE DISTRICT COURT |
|     Plaintiff, | ) | |
| v. | ) ) | _____ JUDICIAL DISTRICT |
| MCLP ASSET COMPANY, INC., | ) ) ) ) ) ) ) | |
|     Defendants. | ) | OF HAYS COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

On this date, the Application for a Temporary Restraining Order filed herein by Plaintiff, **LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER**, (hereinafter "Plaintiff") that was incorporated into and pleaded in the Plaintiff's Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (hereafter **"Petition"),** in this cause, was heard and considered before this Court.

Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of counsel at the hearing. IT CLEARLY APPEARS**:**

    1.    That unless Defendant, MCLP ASSETT COMPANY, INC. and/or their various agents, employees, attorneys, trustees, and substitute trustees (hereinafter "Defendant") are immediately enjoined and restrained, Defendant will proceed with a foreclosure sale of the Plaintiff's property, identified and described in the Petition, and Plaintiff will suffer an immediate

Temporary Restraining Order

Copy from re:SearchTX

and irreparable harm and will have no adequate remedies under the law, and Defendant will commit the foregoing before notice and a hearing on Plaintiff's Application for Temporary Injunction.

    2.    Plaintiff will suffer irreparable harm if Defendant, MCLP ASSET COMPANY, INC. and/or their various agents, employees, attorneys, trustees, and substitute trustees are not restrained immediately because Plaintiff will lose fee simple title and ownership of the property, which is unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final and equitable relief.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant, MCLP ASSET COMPANY, INC. and/or their various agents, employees, attorneys, trustees, and substitute trustees, are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure sale of Plaintiff's property identified and described in the Petition, and which is commonly known as 450 Shady Bluff Dr., Wimberley, TX 78676. Defendant is hereby immediately enjoined from the date of entry of this order until fourteen (14) days hereafter, or until further order of this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the _____ day of February, 2023, at _____ o'clock ____.M. in the courtroom of the _____ District Court of Hays County located in the Hays County Courthouse, 712 S. Stagecoach Trail, San Marcos, TX. 78666, and that Defendant is commanded to appear at that time and are afforded an opportunity to explain why a temporary injunction should not be issued against said Defendant.

    The Clerk of the above-entitled court shall issue a notice of entry of a temporary restraining order in conformity with the law and terms of this order, to include a copy of this order, until the

Temporary Restraining Order

Page 2

Copy from re:SearchTX

filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposit with Hays County District Clerk a bond in the amount of $100.00, in due conformity with applicable law. The bond may be in the form of cash, a cashier's check, attorney check, surety bond, or applied against any funds being held by the said District Clerk.

Signed and Entered on this the _____day of _____, 2023 at_____:_____._.

_____

JUDGE PRESIDING

Temporary Restraining Order

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Robert Newark on behalf of Robert Newark
Bar No. 24040097
robert@newarkfirm.com
Envelope ID: 72361485
Status as of 2/2/2023 11:35 AM CST

Associated Case Party: LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert Newark | | robert@newarkfirm.com | 2/1/2023 8:41:55 PM | SENT |
| Kelly Raper | | Kelly@newarkfirm.com | 2/1/2023 8:41:55 PM | SENT |
| Brittany Wilbanks | | brittany@newarkfirm.com | 2/1/2023 8:41:55 PM | SENT |

Copy from re:SearchTX

# EXHIBIT B-3

Received at District Clerk's Office
On 2/1/2023 8:41 PM

FILED this 6 day of FEB
20 23    9:57a  M
CLERK DISTRICT COURT, HAYS CO. TX
By _____ Deputy

Cause No. 23-0283

| LYNN SCUDDER, ACTING | ) | IN THE DISTRICT COURT |
| UNDER A POWER OF | ) | |
| ATTORNEY GIVEN BY RUBY JO | ) | |
| SCUDDER, | ) | |
| Plaintiff, | ) | |
| v. | ) | 428th JUDICIAL DISTRICT |
| | ) | |
| MCLP ASSET COMPANY, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | OF HAYS COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER

On this date, the Application for a Temporary Restraining Order filed herein by Plaintiff, **LYNN SCUDDER, ACTING UNDER A POWER OF ATTORNEY GIVEN BY RUBY JO SCUDDER**, (hereinafter "Plaintiff") that was incorporated into and pleaded in the Plaintiff's Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (hereafter **"Petition"**), in this cause, was heard and considered before this Court.

Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of counsel at the hearing. IT CLEARLY APPEARS:

1.    That unless Defendant, MCLP ASSETT COMPANY, INC. and/or their various agents, employees, attorneys, trustees, and substitute trustees (hereinafter "Defendant") are immediately enjoined and restrained, Defendant will proceed with a foreclosure sale of the Plaintiff's property, identified and described in the Petition, and Plaintiff will suffer an immediate

Temporary Restraining Order

Page 1

and irreparable harm and will have no adequate remedies under the law, and Defendant will commit the foregoing before notice and a hearing on Plaintiff's Application for Temporary Injunction.

2.    Plaintiff will suffer irreparable harm if Defendant, MCLP ASSET COMPANY, INC. and/or their various agents, employees, attorneys, trustees, and substitute trustees are not restrained immediately because Plaintiff will lose fee simple title and ownership of the property, which is unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final and equitable relief.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendant, MCLP ASSET COMPANY, INC. and/or their various agents, employees, attorneys, trustees, and substitute trustees, are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure sale of Plaintiff's property identified and described in the Petition, and which is commonly known as 450 Shady Bluff Dr., Wimberley, TX 78676. Defendant is hereby immediately enjoined from the date of entry of this order until fourteen (14) days hereafter, or until further order of this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED AND DECREED** that Plaintiff's Application for Temporary Injunction be heard on the _____ day of February, 2023, at _____ o'clock ____ .M. in the courtroom of the _____ District Court of Hays County located in the Hays County Courthouse, 712 S. Stagecoach Trail, San Marcos, TX. 78666, and that Defendant is commanded to appear at that time and are afforded an opportunity to explain why a temporary injunction should not be issued against said Defendant.

The Clerk of the above-entitled court shall issue a notice of entry of a temporary restraining order in conformity with the law and terms of this order, to include a copy of this order, until the Temporary Restraining Order

filing by Plaintiff of the bond hereinafter set.

This Order shall not be effective until Plaintiff deposit with Hays County District Clerk a bond in the amount of $100.00, in due conformity with applicable law. The bond may be in the form of cash, a cashier's check, attorney check, surety bond, or applied against any funds being held by the said District Clerk.

Signed and Entered on this the _____6th_____ day of _____FEBRUARY_____ 2023 at _____9:30_____ am

_____
JUDGE PRESIDING

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| LYNN SCUDDER, ACTING UNDER | § | |
| POWER OF ATTORNEY, GIVEN BY | § | |
| RUBY JO SCUDDER | § | |
| | § | |
|    Plaintiff, | § | Civil Action No. |
| | § | |
| v. | § | |
| | § | |
| MCLP ASSET COMPANY, INC. | § | |
| | § | |
|    Defendant. | § | |

**DECLARATION OF NICHOLAS M. FRAME**

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the following statements are true and correct:

1.    My name is Nicholas M. Frame. I am over the age of 21 years and am fully competent to make this Declaration.  All statements of fact made herein are true, correct, and within my personal knowledge.

2.    I am an attorney for Mackie Wolf Zientz & Mann, P.C., attorneys for MCLP Asset Company, Inc.

3.    On February 9,2023, I searched for the Hays County Central Appraisal District's valuation of the property located at common address 450 Shady Bluff Drive, Wimberley, Texas 78676 (the "Subject Property").  I found the appraisal record for the Subject Property.

4.    I certify the following document attached hereto is a true and correct copy of the original, which I obtained from the Appraisal District web-site for Hays County.  This document is identified as an exhibit to this Declaration as indicated below,

C-1    Data Sheet from the Hays County, Texas Central Appraisal District web-site on February 9, 2023.

This document is incorporated by reference for all purposes.

FURTHER DECLARANT SAYETH NOT."

SIGNED AND DECLARED on February 27, 2023.

_____
**NICHOLAS M. FRAME**

# EXHIBIT C-1

**𝄞 Map**



**🔖 Property Details**

**Account**

Quick Ref ID:          R52852

Legal Description:     WOODCREEK SEC 9A, LOT SC 75-76-77-78

Geographic ID:         11-9818-0000-07500-8

Agent:

Type:                  Real

**Location**

Address:               450 SHADY BLUFF DR, WIMBERLEY, TX 78676

Map ID:

Neighborhood ID:       WOOD

**Owner**

Owner ID:              ████████

Name:                  SCUDDER, RUBY JO

Mailing Address:       3512 PIEDMONT PL
                       SCHERTZ, TX 78154-2522

% Ownership:           100.0%

Exemptions:            For privacy reasons not all exemptions are shown online.

# 🔖 Property Values

| | |
|---|---|
| Improvement Homesite Value: | $ |
| Improvement Non-Homesite Value: | $388,56 |
| Land Homesite Value: | $ |
| Land Non-Homesite Value: | $76,32 |
| Agricultural Market Valuation: | $ |
| | |
| Value Method: | OV |
| Market Value: | $464,88 |
| Ag Use Value: | $ |
| | |
| Appraised Value: | $464,88 |
| Homestead Cap Loss: ❓ | $ |
| | |
| Assessed Value: | $464,88 |

---

**VALUES DISPLAYED ARE 2022 CERTIFIED VALUES. FOR THE MOST UP TO DATE OWNERSHIP, PLEASE CHANGE THE TAX YEAR TO 2023.**

---

Information provided for research purposes only. Legal descriptions and acreage amounts are for appraisal district use only and should be verified prior to using for legal purpose and or documents. Please contact the Appraisal District to verify all information for accuracy.

---

## ▌Property Taxing Jurisdiction

| ntity | Description | Market Value | Taxable Valu |
|-------|-------------|-------------:|-------------:|
| AD | APPRAISAL DISTRICT | $464,883 | $464,88 |
| WI | WIMBERLEY HAYS CO ESD #7 | $464,883 | $464,88 |
| WI | WIMBERLEY FIRE HAYS CO ESD #4 | $464,883 | $464,88 |
| HA | HAYS COUNTY | $464,883 | $464,88 |
| SP | SPECIAL ROAD | $464,883 | $464,88 |
| WI | WIMBERLEY ISD | $464,883 | $464,88 |

**Total Tax Rate:** 0.000000

## ▌Property Improvement - Building

**Type:** Residential **State Code:** B3 **Living Area:** 3,472.00sqft **Value:** $279,420

| ype | Description | Class CD | Year Built | SQFT | Assessed Valu |
|-----|-------------|----------|-----------:|-----:|--------------:|
| A | Main Area | | 1995 | 1,736.00 | $139,71 |
| AUPST | Main Area Upstairs | | 1995 | 1,736.00 | $139,71 |
| KG | PKG | | 2004 | 0.00 | $ |

## ▌Property Land

| ype | Description | Acreage | Sqft | Eff Front | Eff Depth | Market Value | Prod. Valu |
|-----|-------------|---------|------|-----------|-----------|-------------:|-----------:|
| 3 | B3-Fourplex (triplex Included) | | | | | $28,800 | $ |
| 3 | B3-Fourplex (triplex Included) | | | | | $18,720 | $ |
| 3 | B3-Fourplex (triplex Included) | | | | | $14,400 | $ |
| 3 | B3-Fourplex (triplex Included) | | | | | $14,400 | $ |

🔖 Property Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap Loss | Assesse |
|------|-------------|-------------|--------------|-----------|-------------|---------|
| 2023 | N/A | N/A | N/A | N/A | N/A | N/ |
| 2022 | $388,563 | $76,320 | $0 | $464,883 | $0 | $464,88 |
| 2021 | $373,838 | $46,640 | $0 | $420,478 | $0 | $420,47 |
| 2020 | $205,640 | $42,400 | $0 | $248,040 | $0 | $248,04 |
| 2019 | $205,640 | $80,520 | $0 | $286,160 | $0 | $286,16 |
| 2018 | $205,920 | $66,720 | $0 | $272,640 | $0 | $272,64 |
| 2017 | $219,060 | $16,000 | $0 | $235,060 | $0 | $235,06 |
| 2016 | $204,160 | $16,000 | $0 | $220,160 | $0 | $220,16 |
| 2015 | $204,160 | $16,000 | $0 | $220,160 | $0 | $220,16 |
| 2014 | $204,160 | $16,000 | $0 | $220,160 | $0 | $220,16 |
| 2013 | $204,160 | $16,000 | $0 | $220,160 | $0 | $220,16 |
| 2012 | $198,200 | $16,000 | $0 | $214,200 | $0 | $214,20 |

🔖 Property Deed History

| eed Date | Type | Description | Grantor | Grantee | Volume | Page | Numbe |
|----------|------|-------------|---------|---------|--------|------|-------|
| 1/29/2010 | SWD | Special Warranty Deed | | SCUDDER, RUBY JO | ███ | 95 | ███ |
| 4/18/2005 | CWD | Cash Warranty Deed | TEICHELMANN, R W, Jr | SCUDDER RUBY JO LIVING TRUST | ███ | 403 | |
| 5/18/1995 | CVD | CVD | | TEICHELMANN, R W, Jr | ███ | 786* | |